## UNITED STATES v. DOMINION OIL CO. et al.

(Circuit Court of Appeals, Ninth Circuit.    May 3, 1920.)

### No. 3411.

1. **Mines and minerals ☞36—Oil locations by agents are valid.**

    Locators of oil claims may act as agents for others, so that the fact that some locators were acting at the request of friends and did not expect to get any interest as locators does not invalidate the locations, where no one person was to acquire a larger interest in any location than the law allows.

2. **Mines and minerals ☞36—Proof of numerous other locations on same day does not invalidate particular location.**

    Proof that the persons who located the oil claim in controversy also located on the same day 207 claims, even if creating the assumption that the locators' purpose was not to develop all the claims, does not affect the validity of the claim in controversy, if the locators did intend to do development work thereon.

3. **Mines and minerals ☞36—Development of oil claim held to have been diligent.**

    Where the locators had raised $25,000 for the development of an oil claim, procured a drilling rig and complete outfit therefor before the withdrawal of the land, and worked the claim continuously and uninterruptedly after the withdrawal until oil was struck, the court's conclusion that development was pursued with diligence by a bona fide occupant was sustained.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; R. S. Bean, Judge.

Suit by the United States against the Dominion Oil Company and others. Decree for defendants, and the United States appeals. Affirmed.

Henry F. May and Eugene B. Lacy, Sp. Asst. Attys. Gen., and Chas. D. Hamel, Sp. Asst. U. S. Atty., of San Francisco, Cal., for the United States.

A. L. Weil, J. R. Pringle, and Oscar Sutro, all of San Francisco, Cal., and Andrews, Toland & Andrews, of Los Angeles, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge.   This appeal involves a controversy concerning a quarter section of oil-bearing land included within the presidential withdrawal order of September 27, 1909.   The appellant asserts that the location under which the appellees claim was made for the benefit of the British-American Oil Company, to enable it to acquire title to a larger area of mining land than the law permits, and that it is therefore fraudulent and void, and that, if it was not made for the benefit of that corporation, it was made for persons other than those whose names were used in the pretended location notices, for the purpose of permitting such persons to acquire more than 20 acres,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in violation of the mining law. The court below found, and the evidence amply sustains the finding, that the location was not made for the benefit of the British-American Oil Company.

[1] The appellant, while admitting in this court that the proof on that point "might not be sufficient," now relies upon the allegation that the location was made for some one other than the persons whose names were used therein. The facts are that the location in controversy was one of 207 locations made on January 1, 1908, by 15 locators, in the names of 21 persons, and that some of the locators were acting at the request of friends, and that they did not claim or expect to get any interest as locators. But the evidence was that upon the agreement between the locators no one person was to have a larger interest in any one location than that which the law permits. That locators may act as agents for others, and that such agency is not prohibited, is well settled by the authorities. Book v. Justice Min. Co. (C. C.) 58 Fed. 106; McCulloch v. Murphy (C. C.) 125 Fed. 147; United States v. McCutchen (D. C.) 217 Fed. 650; Dunlap v. Pattison, 4 Idaho, 473, 42 Pac. 504, 95 Am. St. Rep. 140; Whiting v. Straup, 17 Wyo. 1, 95 Pac. 849, 129 Am. St. Rep. 1093; Moore v. Hamerstag, 109 Cal. 122, 41 Pac. 805.

[2] On March 4, 1908, the locations were all conveyed to Elliott and Strong, in trust for the locators. It was decided to incorporate, rather than to hold the title in trust; but, instead of incorporating, use was made of an available corporation already in existence, and on May 4, 1909, Elliott and Strong conveyed the locations to the British-American Oil Company, a corporation which had issued no stock, except a few shares to qualify directors, and had done no business. When the conveyance was made, all of the directors but one resigned, and their places were filled by Elliott and Strong, and three others of the parties interested in the locations. Thereafter the claims were managed and controlled by the corporation. The contention that the location in controversy was speculative rests mainly upon the fact that the locators thereof made location of 207 claims in a single day, from which it is assumed that their purpose could not have been to explore or develop all the claims. But the validity of this particular location depends only upon what was done with reference to it. There was no proof that, when it was made, the locators did not intend to do development work thereon. In locating it, none of the locators acquired more than a 20-acre interest therein.

[3] We find no ground to disturb the conclusion of the court below that development work on the claim was pursued with diligence by a bona fide occupant. Briefly stated, the facts are that early in September six of the locators contributed a fund of $25,000 for the development of the claim, that on September 17, 1909, a large amount of lumber was delivered on the claim for a drilling rig, and on September 20th a complete outfit of rig irons, tools, cordage, boiler, engine, and fittings, costing $7,500, was ordered, and that appropriate work was continuous and uninterrupted until December 25th, when oil was struck.

The decree is affirmed.